UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TODD RENE HARRIS,

        Petitioner,

                                          Civil No. 06-14074
v.                                         Honorable David M. Lawson

MILLICENT WARREN, Warden

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

        The petitioner, Todd Rene Harris, currently incarcerated at the Thumb Correctional Facility in Lapeer, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, the petitioner challenges his Genesee County, Michigan circuit court convictions of second-degree murder, Mich. Comp. Laws § 750.317, and unlawful driving away an automobile, Mich. Comp. Laws § 750.413, for which he was sentenced to concurrent prison terms of sixty to ninety years and four years nine months to ten years, respectively, as a third habitual offender. The petitioner contests the sufficiency of the evidence to support his second-degree murder conviction, the effectiveness of trial counsel in various respects, and the denial of the petitioner's pretrial request for substitution of counsel. The respondent has filed an answer to the petition contending that it should be denied for lack of merit. The Court finds that the petitioner's claims lack merit and do not warrant habeas relief. Therefore, the Court will deny Mr. Harris's petition.

I.

On September 8, 2000, the petitioner stabbed Aaron Smith to death during an altercation outside a bar in Flint, Michigan, and then he drove away in Smith's vehicle following the incident. The trial testimony revealed that Smith attempted to intervene in a dispute between the petitioner and the petitioner's wife that evening. During the confrontation, the petitioner momentarily fell backward, then lunged forward and stabbed Smith repeatedly in the chest and the back, inflicting fatal wounds. Witnesses who lived near the bar testified that the petitioner chased Smith and continued stabbing him even after he fell to the ground. Those witnesses also reported that they did not see Smith holding the knife, nor did they observe a gun in his possession. The petitioner, on the other hand, testified that Smith threatened him, pushed him, displayed the knife in his waistband, and appeared to be reaching for a gun during the altercation. The petitioner claimed that he grabbed the knife from Smith and stabbed him in self-defense. The petitioner's wife also testified that Smith pushed and threatened the petitioner, but admitted that she did not see Smith holding a knife or displaying a gun. Following the stabbing, the petitioner fled the scene in Smith's car. He then fled the state and subsequently was arrested on a bus in Georgia.

Following his convictions and sentencing, the petitioner filed a direct appeal in the Michigan Court of Appeals raising the same claims that are presented on federal habeas review. The Michigan Court of Appeals affirmed his convictions and sentence. *See People v. Harris*, No. 234686, 2002 WL 31953816 (Mich. Ct. App. Dec. 13, 2002) (unpublished). The Michigan Supreme Court denied leave to appeal in a standard order. *See People v. Harris*, 469 Mich. 984, 674 N.W.2d 155 (2003) (table). The petitioner also sought collateral review in the state courts, but was denied relief after appealing through all levels. *See People v. Harris*, 475 Mich. 871, 714 N.W.2d 657 (2006) (stating

that the "defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)). The petitioner timely filed a petition for writ of habeas corpus in this Court raising the following issues:

I. The prosecution presented insufficient evidence to support the second-degree murder conviction.

II. Trial counsel was ineffective for failing to move for a directed verdict on the first-degree murder charge.

III. The trial court failed to adequately consider the petitioner's request for substitution of counsel.

IV. Trial counsel was ineffective and he is entitled to an evidentiary hearing for proper review of undeveloped claims.

The respondent filed an answer opposing the petition on the ground that the claims lack merit and do not warrant relief.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir.1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision

-4-

unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .
>
> [A]n unreasonable application of federal law is different from an incorrect application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409-11; *see also Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

### A.

The petitioner first asserts that he is entitled to habeas relief because the prosecution failed to present sufficient evidence to support his second-degree murder conviction. The petitioner maintains that the prosecution failed to establish that he acted with malice because the circumstances of the killing, namely the victim's actions in confronting and threatening the petitioner, reduced the offense to manslaughter.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The standard of review for a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond

a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). In the habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16). "A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). Accordingly, "[t]he mere existence of sufficient evidence to convict . . . defeats a petitioner's claim." *Matthews*, 319 F.3d at 788-89.

Under Michigan law, a conviction for second-degree murder requires proof of: (1) a death, (2) caused by an act of the defendant, (3) while the defendant had the intent to kill, the intent to cause great bodily harm, or the intent to perform an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm, and (4) without justification or excuse. *People v. Bailey*, 451 Mich. 657, 669, 549 N.W.2d 325, 331 (1996); *see also People v. Aldrich*, 246 Mich. App. 101, 123, 631 N.W.2d 67, 80 (2001). The state court of appeals found that the State had offered evidence on these elements in the petitioner's case:

> In this case, the prosecution established the element of malice by presenting testimony that defendant repeatedly stabbed the victim even after the victim attempted to run away. Because the question of whether there was adequate provocation so as to reduce the crime from murder to voluntary manslaughter was left to the trier of fact, the jury was free to reject this claim and find defendant guilty of second-degree murder.

*Harris*, 2002 WL 31953816, at *3.

Although that court did not cite *Jackson* or cases that are derived form it, this Court finds that the state appellate court's decision properly applies that federal precedent. The eyewitness testimony and the petitioner's own admissions established that he committed the stabbing. The

testimony that the petitioner chased the victim and stabbed him repeatedly even after the victim fell to the ground established that the petitioner acted with the requisite intent and without sufficient justification or excuse. Although the petitioner claimed that the victim was armed with a knife and a gun and made threatening statements, the testimony of the other disinterested witnesses did not support his version of events. It is the jury that must resolve the evidentiary conflict when there is sufficient evidence supporting both theories of guilt and innocence, as there was here. *See Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.") (citing *Jackson*, 443 U.S. at 319). There was sufficient evidence to support the conviction, and the state courts did not unreasonably apply the rule of *Jackson v. Virginia*.

B.

The petitioner next asserts that trial counsel was ineffective by failing to move for a directed verdict on the first-degree murder charge where the prosecution presented insufficient evidence of premeditation. The petitioner claims that this decision caused the jury to reach a compromise verdict on the murder charge. In assessing whether the petitioner was deprived of effective assistance of counsel, the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient if "counsel's representation fell below an

objective standard of reasonableness." *Id.* at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688) (internal quotes omitted).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687; *McQueen v. Scroggy*, 99 F.3d 1302, 1311 (6th Cir. 1996), *overruled on other grounds by In re Abdur'Rahman*, 392 F.3d 174 (6th Cir. 2004) (holding that a reviewing court applying *Strickland* must determine whether counsel's alleged errors "have undermined the reliability of and confidence in the result.").

In this case, the petitioner did not move for a new trial or seek an evidentiary hearing on his ineffective assistance of counsel claims in the trial court under state procedures; the Michigan Court of Appeals therefore limited its review of his ineffective assistance of counsel claims to mistakes apparent from the record. *See Harris*, 2002 WL 31953816, at *3. It denied the ineffective

-8-

assistance of counsel claim by rejecting its underlying premise: that a motion for judgment of acquittal might have had a chance of succeeding. The court stated: "Because there was sufficient evidence to establish the elements of both first-degree murder and carjacking, defense counsel's failure to move for a directed verdict on these charges did not amount to error. Accordingly, defendant was not denied the effective assistance of counsel on this basis." *Ibid.* The court also found that the petitioner could not establish that he was prejudiced because the jury was instructed against reaching a compromise verdict, the petitioner was acquitted of the first-degree murder charge, and there was sufficient evidence to support his second-degree murder conviction. *Id.* at *2.

These rulings speak to both the deficient performance and prejudice prongs of the *Strickland* test. Although it is almost a matter of routine for defense counsel to move for acquittal at the close of the State's proofs, and there is no down side in making such a motion, defense counsel is not required to engage in acts of futility in the name of proper performance. *See Norris v. Schotten*, 146 F.3d 314, 336 (6th Cir. 1998). Under the *Strickland* standard, counsel's failure to raise an objection or argument can only be deemed ineffective if there is a reasonable probability that the argument would have prevailed at the time counsel failed to raise it. *See McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004).

The Court agrees with the state courts' conclusion that no prejudice can flow from defense counsel's failure to move for acquittal. There was sufficient evidence supporting the greater charge of first-degree murder, and the jury had a right to consider it. Therefore, although in some cases allowing a jury to compromise "down" to a lesser charge from an unsupported greater charge may amount to a due process violation, *see Price v. Georgia*, 398 U.S. 323 (1970), this is not such a case.

The Court cannot find that the state court's rejection of the petitioner's ineffective assistance of counsel claim was contrary to or an unreasonable application of *Strickland*.

C.

The petitioner next asserts that he is entitled to habeas relief because the trial court erred in denying his pretrial request for substitute appointed counsel. The trial court held a hearing on this issue one month before trial. At that hearing, the petitioner expressed dissatisfaction with counsel's failure to file a discovery motion, challenge the bind-over, and use witnesses to support his self-defense claim. Trial counsel responded that he had all of the available discovery and had given it to the petitioner. Trial counsel also explained that he did not challenge the bind-over decision because the petitioner was being held on an open murder charge such that a motion to quash or reduce the charges would be frivolous. As to additional motions, trial counsel indicated that he was awaiting certain transcripts and had more time to file motions before the deadline. Lastly, trial counsel stated that he had not heard of one of the petitioner's proposed defense witnesses, but that he had interviewed another, Anthony Raymond, and had put him on the witness list. The trial court denied the request for substitute counsel, finding no reason for removal. *See* 2/16/01 Motion Hrg., pp. 1-19.

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This constitutional right is applicable to the states through the Fourteenth Amendment. *Serra v. Mich. Dep't of Corrs.*, 4 F.3d 1348, 1351 (6th Cir. 1993) (citing *Gideon v. Wainwright*, 372 U.S. 335, 344-45 (1963)). "A criminal defendant who desires and is financially able to retain his own counsel 'should be afforded a fair opportunity to secure counsel of his own choice.'" *Ibid.* (quoting *Powell*

*v. Alabama*, 287 U.S. 45, 53 (1932)).  However, "[t]he right to the assistance of counsel at trial does not guarantee that a criminal defendant will be represented by a particular attorney."  *Serra*, 4 F.3d at 1351; *see also Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989) ("Petitioner does not, nor could it defensibly do so, assert that impecunious defendants have a Sixth Amendment right to choose their counsel.  The Amendment guarantees defendants in criminal cases the right to adequate representation, but those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts.").

"A motion for new appointed counsel based upon defendant's dissatisfaction with his counsel previously appointed is addressed to the sound discretion of the trial court."  *United States v. White*, 451 F.2d 1225, 1226 (6th Cir. 1971).  The Sixth Circuit cites four factors to consider when assessing a trial court's exercise of discretion in denying a continuation of trial to obtain new counsel: "(1) the timeliness of the motion, (2) the adequacy of the court's inquiry into the matter, (3) the extent of the conflict between the attorney and client and whether it was so great that it resulted in a total lack of communication preventing an adequate defense, and (4) the balancing of these factors with the public's interest in the prompt and efficient administration of justice."  *United States v. Mack*, 258 F.3d 548, 556 (6th Cir. 2001).

The Michigan Court of Appeals ruled that the trial court did not abuse its discretion in denying the petitioner's request for substitute counsel stating:

> In Michigan, an indigent defendant is not entitled to select or change appointed counsel upon request.  *People v. Ginther*, 390 Mich 436, 441; 212 NW2d 922 (1973); *People v. Traylor*, 245 Mich App 460, 462; 628 NW2d 120 (2001).  To obtain the replacement of appointed counsel, a defendant must demonstrate good cause and no unreasonable disruption in the judicial process.  *Id.*  "Good cause" may exist when the defendant's appointed counsel "is not adequate or diligent or . . . is

> disinterested." *Ginther, supra* at 442. "Good cause" may also be established by showing the existence of a legitimate difference of opinion between a defendant and his appointed counsel regarding a fundamental trial tactic. *Traylor, supra* at 462. In this case, the trial court did not abuse its discretion in denying defendant's request to replace his appointed trial counsel on the basis that counsel failed to challenge the bindover on the first-degree murder charge, to file any discovery motions or to call a defense witness in behalf of defendant's claim of self-defense. Here, the trial court noted that defendant failed to provide "any reason" to support his dissatisfaction with appointed counsel.

*Harris*, 2002 WL 31953816, at *4.

This decision is neither contrary to nor an unreasonable application of Supreme Court precedent. The record indicates that although the petitioner expressed some dissatisfaction with defense counsel prior to trial, his areas of concern were addressed and resolved at the hearing on the matter. The record does not indicate that any differences between the petitioner and counsel were so great that they resulted in a breakdown in communication or the inability to prepare and present an adequate defense. The state courts reasonably determined that there was no basis for the substitution of counsel one month before trial. The petitioner is not entitled to habeas relief resulting from the continued representation of his appointed counsel unless he can show that counsel was constitutionally ineffective.

D.

In his last argument, the petitioner claims just that. He says trial counsel was ineffective in: (1) failing to call Anthony Raymond to testify for the defense; (2) opening the door to evidence of flight; (3) failing to file a pretrial motion to exclude bad acts evidence, or to object, seek a mistrial, or request a limiting instruction as to that evidence; (4) failing to object, seek a mistrial, or request a cautionary instruction when the prosecutor asked racial questions; (5) failing to properly consult with the petitioner before he took the stand and failing to object or request a mistrial as to

impeaching hearsay statements; and (6) failing to timely object or request a mistrial based upon a denial of the right to a public trial.

Each of these claims must be evaluated against the *Strickland* standard, described above.

The petitioner asserts that counsel was ineffective for failing to call Anthony Raymond to testify at trial because Raymond would have corroborated his self-defense claim. Decisions as to what evidence to present and whether to call certain witnesses are generally presumed to be a matter of trial strategy, although such decisions must be reasonable. *See Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). The failure to call witnesses or present other evidence may constitute ineffective assistance of counsel when it deprives a defendant of a substantial defense. *See Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002). Counsel may be deficient for failing to call witnesses whose testimony would corroborate the defendant's version of events, if such evidence is not merely cumulative. *See Stewart v. Wolfenbarger*, 468 F.3d 338, 358-59 (6th Cir. 2007) (citing cases and ruling that testimony of two alibi witnesses was not cumulative to the defendant's own testimony); *Workman v. Tate*, 957 F.2d 1339, 1345-46 (6th Cir. 1992) (finding ineffective assistance of counsel based on counsel's failure to interview witnesses who would corroborate the defendant's account of events). In this case, however, the petitioner has failed to present any evidence (such as an affidavit from Anthony Raymond) to show that Raymond was willing and available to testify at trial and that his testimony would have bolstered the petitioner's self-defense claim. Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *See, e.g.*, *Workman v. Bell*, 160 F.3d 276, 287 (6th Cir. 1998), *republished at* 178 F.3d 759 (6th Cir. 1998); *see also Zettlemoyer v. Fulcomer*, 923 F.2d 284, 301 (3d Cir. 1991) (bald assertions and conclusory allegations do not provide sufficient basis to hold an evidentiary hearing in habeas proceedings).

Additionally, although the record indicates that counsel interviewed Raymond and put him on the witness list, the record also shows that counsel was concerned about Raymond's credibility. Absent evidence to the contrary, the Court presumes that counsel made an informed and strategic decision not to produce Raymond at trial. *See Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) (noting that the presumption that counsel's choices were strategic has particular force when a habeas petitioner's ineffective assistance of counsel claim is based solely on the trial record because a reviewing court "may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive") (citation omitted). The petitioner has failed to establish that counsel erred or that he was prejudiced by counsel's decision not to call Anthony Raymond as a witness.

The petitioner next asserts that counsel was ineffective for opening the door to evidence of his flight. Such evidence is admissible at trial under Michigan law. *See People v. Goodin*, 257 Mich. App. 425, 432, 668 N.W.2d 392, 396 (2003); *People v. Coleman*, 210 Mich. App. 1, 4, 532 N.W.2d 885, 887 (1995). Although the Supreme Court has expressed skepticism as to the probative value of evidence of flight, *see Wong Sun v. United States*, 371 U.S. 471, 483 n.10 (1963), it has recognized that such evidence may be relevant to show consciousness of guilt. *See United States v. Scheffer*, 523 U.S. 303, 331 (1998) (Stevens, J., dissenting). Federal appellate courts also have held that evidence of flight is generally admissible to show consciousness of guilt. *See United States v. Dillon*, 870 F.2d 1125, 1126 (6th Cir. 1989); *accord United States v. Glenn*, 312 F.3d 58, 67 (2d Cir. 2002); *United States v. Lupino*, 301 F.3d 642, 646 (8th Cir. 2002). The flight evidence in this case was also relevant to explain the lapse of time between the incident and the petitioner's arrest and his criminal proceedings. The admission of flight evidence is not fundamentally unfair. *See, e.g., Dorchy v. Jones*, 320 F. Supp. 2d 564, 580 (E.D. Mich. 2004), *aff'd*, 398 F.3d 783 (6th Cir.

2005) (concluding that the petitioner has not shown that "the admission of [the flight] evidence rendered his trial fundamentally unfair."); *Wright v. Jamrog*, No. 04-CV-71585-DT, 2005 WL 3262544, at *7 (E.D. Mich. 2005) (admission of flight evidence was proper under Michigan law and did not justify habeas relief). Because the flight evidence was admissible, counsel may have decided reasonably to bring out the evidence on the petitioner's direct examination to lessen its impact on the jury and to establish that the petitioner was attempting to return to Michigan at the time of his arrest. The petitioner has failed to show that the decision amounted to unsound trial strategy, and therefore cannot establish deficient performance.

The petitioner alleges that counsel was ineffective by failing to file a pretrial motion to exclude certain bad acts evidence, or to object, seek a mistrial, or request a limiting instruction as to that evidence. The evidence to which the petitioner refers is proof that he stole a van en route to Georgia and committed a larceny while in Georgia. As discussed above, however, that evidence was properly admitted as evidence of the petitioner's flight, as well as his attempt to avoid capture and prosecution. *See People v. McGhee*, 268 Mich. App. 600, 613, 709 N.W.2d 595 (2005) (ruling that Michigan Rule of Evidence 404(b) does not preclude evidence of criminal actions accompanying flight because those actions are part of the *res gestae* of the incident and are probative of his intent to avoid capture negating innocent intent). Because the evidence was admissible under state law, counsel did not err by not raising an objection. Although a limiting instruction perhaps would have aided the petitioner, the decision not to request one can be relegated to trial strategy on the premise that counsel wished to avoid drawing further attention to the issue. The petitioner has failed to show that counsel's performance was deficient.

The petitioner next asserts that counsel was ineffective by failing to object, seek a mistrial, or request a cautionary instruction when the prosecutor asked questions related to the race of the individuals involved in an incident. The record indicates that the prosecution questioned the petitioner (who is white) about his possible bias against the victim (who was African-American). The petitioner's possible motivation for stabbing Smith, the victim, however, was relevant to the case and was a valid area of inquiry. *See, e.g., People v. Rice*, 235 Mich. App. 429, 440, 597 N.W.2d 843, 850 (1999) ("Proof of motive in a prosecution for murder, although not essential, is always relevant"); *see also People v. Hoffman*, 225 Mich. App. 103, 109, 570 N.W.2d 146 (1997). Moreover, trial counsel may have decided reasonably to allow the petitioner to respond to the prosecutor's inquiry and thereby show that the petitioner had nothing to hide and could explain that his actions were in fact not racially motivated. The petitioner has not shown that counsel was ineffective under those circumstances.

The petitioner next asserts that counsel was ineffective by failing to consult with the petitioner before the petitioner testified and by failing to object or request a mistrial based upon the prosecution's use of hearsay statements. The petitioner points to the prosecution's impeachment of his testimony with his own prior statements to the police. The prosecution, however, was entitled to impeach the petitioner with prior inconsistent statements. Those statements were not hearsay because they were inconsistent, the petitioner testified at trial, and he was a party to the case. *See* Mich. R. Evid. 801(d)(1)(A), (d)(2)(A); *People v. Kowalak*, 215 Mich. App. 554, 556-557, 546 N.W.2d 681, 682 (1996). Further, the use of those statements did not violate the Confrontation Clause because they were the petitioner's own statements. *See, e.g., Miller v. Stovall*, 573 F. Supp. 2d 964, 997 (E.D. Mich. 2008); *Johnson v. Renico*, 314 F. Supp. 2d 700, 707 (E.D. Mich. 2004)

(citing cases). The petitioner had the opportunity to refute or explain his prior statements while testifying at trial. The petitioner has alleged no facts that demonstrate that counsel failed to consult with him about his testimony. The petitioner has not established that counsel was ineffective or that his constitutional rights were otherwise violated.

Last, the petitioner asserts that counsel was ineffective by failing to object timely or request a mistrial based upon a denial of the right to a public trial. The petitioner claims that some of his supporters, such as family members and clergy, were asked to leave the courtroom during the trial and these restrictions violated his right to a public trial. The petitioner acknowledges that these restrictions were discontinued when the parties realized that a mistake had been made, but he alleges that some of his supporters had left the courtroom. The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. A public trial furthers the goal of providing an accused with a fair trial by ensuring that judge and prosecutor carry out their duties responsibly, encourages witnesses to come forward, and discourages perjury. *See Waller v. Georgia*, 467 U.S. 39, 46 (1984). The violation of the constitutional right to a public trial is a structural error, not subject to harmless error analysis. *Id.* at 49-50 n.9; *see also United States v. Gonzalez-Lopez*, 548 U.S. 140, 149 (2006) (citing *Waller*). However, a courtroom closure does not violate the Sixth Amendment when: (1) the moving party advances an overriding interest that is likely to be prejudiced by an open courtroom; (2) the moving party demonstrates that the closure is no broader than necessary to protect that interest; (3) the trial court considers reasonable alternatives to closing the proceeding; and (4) the trial court makes findings adequate to support the closure. *Waller*, 467 U.S. at 48.

The record in this case indicates that a witness sequestration order was in effect during the petitioner's trial. The petitioner does not challenge that order itself. During the proceedings, defense counsel objected when he observed a police officer removing, or attempting to remove, certain individuals from the courtroom pursuant to the sequestration order. The trial court inquired into the matter and the parties agreed that the individuals would not be called as witnesses. The trial court instructed that those individuals, and any individuals who would not be called as witnesses, should be allowed to remain or return to the courtroom. *See* Trial Tr. Vol. I, pp. 5, 202-04. Contrary to the petitioner's assertion, the state court record demonstrates that trial counsel was not ineffective, since counsel detected a violation of the public trial rule, objected, and obtained the desired remedy.

Habeas relief is not warranted on the petitioner's ineffective assistance of counsel claims.

### III.

The state court decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [dkt # 1] is **DENIED**.

                                                  s/David M. Lawson  
                                                  DAVID M. LAWSON  
                                                  United States District Judge

Dated:   April 23, 2009

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 23, 2009.

                                            s/Lisa M. Ware
                                            LISA M. WARE